THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. Domingo EMMANUELLI FONTÁNEZ, ETC., Defendant and Appellant.

No. 11955. Argued June 3, 1947.—Decided July 22, 1947.

*Miguel Guerra Mondragón* and *Guillermo Cintrón Ayuso* for appellant. *Luis Negrón Fernández, Attorney General,* and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Domingo Emmanuelli Fontánez was charged in the District Court of Ponce with the offense of murder in the first degree. He was convicted by a jury of murder in the sec-

ond degree and sentenced by the court to serve from twelve to twenty-four years' imprisonment.[1] Before imposing the sentence, defendant moved for a new trial which was denied. He further moved that the probation officer be ordered to make an investigation in order that the court should suspend his sentence pursuant to Act No. 259 of April 3, 1946 (Laws of 1946, p. 534).

The court granted the last motion and the probation officer rendered his report to the court recommending a suspended sentence. Notwithstanding this, the lower court decided not to suspend it for the reasons hereinafter stated.

The defendant appealed from the judgment as well as from the denial of the new trial and alleges that the lower court erred, first, in denying his motion for a new trial, and second, in denying his petition for a suspended sentence. We shall examine the first assignment.

 The motion for a new trial filed by the defendant was based on the two following grounds:

"(a) Because during the trial a person, who happened to be detective Coca Duchesne, and who was constantly seen with the District Attorney, who acted in this case, Mr. José C. Aponte, gave the jury the impression that defendant had to be punished of the crime of murder.

"(b) Because during the trial and while the jury was deliberating in the District Court of Ponce, jurors Cristóbal Santiago and Francisco del Valle were searched and said jurors were so impressed that they were prevented from deciding the case in a proper and conscientious manner. (Subdivisions 2 and 3, § 303, Code of Criminal Procedure.)"

The motion was filed with affidavits by Mr. Cristóbal Santiago and Francisco del Valle, two of the jurors who acted in the case and others by Messrs. Manuel A. Emmanuelli, defendant's brother and José Reyes Torres.

In brief, the affidavits tend to support the motion for a new trial, although there exist contradictions between them.

---

[1] This indeterminate sentence was imposed under Act No. 295 of April 10, 1946 (Laws of 1946, p. 758), which provides for this kind of sentences in Puerto Rico.

The incidents in question took place before the close of the trial and before the jury retired to deliberate. As to the one under letter (a) in the motion for a new trial, it appears from the affidavits of Messrs. Emmanuelli and Reyes that Judge Luis R. Polo, who was presiding the court, carried out the corresponding investigation in the presence of defendant's attorney, Mr. Susoni, Jr. Notwithstanding this, the defense did not raise before the court, at that time nor at any other time during the rest of the trial, any question of mistrial or of any other kind. Apparently, counsel did not believe that defendant's rights had been impaired and allowed the trial to continue to the end on September 15, 1946. Not until two months later, that is, on November 15, 1946, was the motion for a new trial filed. It was based exclusively on the facts alleged to have happened during the trial.

It is a settled rule that a defendant should not remain silent when an irregularity takes place during the trial, which he considers prejudicial to his rights and subsequently, after the case is closed, assign, on appeal, if convicted, said irregularity as error. *Baldwin* v. *Kansas,* 129 U. S. 52; *People* v. *Báez,* 45 P.R.R. 498; *People* v. *Arroyo,* 67 P.R.R. 33; *People* v. *Márquez,* 67 P.R.R. 303. In 96 A.L.R. 530 this doctrine is set forth extending it to motions for a new trial, thus:

"The general rule is that misconduct on the part of anyone in connection with the jury after their retirement, although it be of a character which might vitiate the verdict if brought to the attention of the court by timely complaint, is not available after the return of the verdict, as *a ground for a new trial or reversal,* where it was known to the defendant or his counsel before the return of the verdict." (Italics ours.)

To justify a new trial due to demonstrations or misconduct on the part of the public or spectators at a trial, the objection should be made before the verdict is rendered.

*Powell* v. *State,* 141 So. 201 (reversed on other grounds in *Powell* v. *State of Alabama,* 287 U. S. 45).

As we have said, defendant's attorney in this case not only knew of the facts set forth in subdivision (*a*) of the motion for a new trial, immediately after they took place, but he took part with the judge in the investigation. By remaining silent he accepted that the rights of his client had not been prejudiced. The lower court did not err in denying the new trial sought on this ground.

As to the assignment under letter (*b*), it is based on affidavits of jurors Santiago and Del Valle, to the effect that members of the jury were searched in the jury-room, according to Mr. Santiago, by a bailiff and according to Mr. Del Valle by the bailiff and two other persons unknown to him, and because of this they were prevented, when the case was finally submitted to the jury, from discussing certain aspects of the evidence and the incidences of the trial.

Notwithstanding this incident, when the jury rendered the verdict of conviction and when there were polled, they all answered in the affirmative. If it was true that jurors Santiago and Del Valle had been unable to consider the evidence due to the aforesaid incident, that was the proper time to inform the court. They failed to do so, but instead each one ratified the verdict rendered. Subsequently, two months later, they subscribed affidavits impeaching their own action.

Subdivision 4 of § 303 of the Code of Criminal Procedure provides that a new trial may be granted "when the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors."

We have decided that pursuant to this subdivision a new trial is not justified because one or more of the jurors should present affidavits to the effect that they were induced to render a verdict of murder in the ·second degree, recommending mercy, because they thought that it was equivalent to voluntary manslaughter, *People* v. *Ramírez,* 50 P.R.R. 224; or that they rendered such verdict because of inexperience,

*People* v. *Lebrón,* 47 P.R.R. 408; or that they rendered a verdict of murder in the second degree under the impression that they could not render one for involuntary manslaughter; *People* v. *Cruz,* 49 P.R.R. 637.

The general rule of California is that the jurors are legally incapacitated to impeach their verdict in any manner whatsoever, either by affidavits or by testimony except in cases expressly provided by law. 8 Cal. Jur. 436, sec. 458; 7 McKinney, New California Digest 549; *People* v. *Kennedy,* 69 P. (2d) 224; *People* v. *Gidney,* 73 P. (2d) 1186.

As to whether affidavits or testimony of jurors are admissible to show improper acts or communications of third persons with the jurors while they are deliberating, the authorities are divided but the majority uphold their admissibility. 90 A.L.R. 249; 146 A.L.R. 514.

In the case at bar no irregularity took place while the jury was deliberating. Our ruling in *People* v. *Saldaña,* 66 P.R.R. 181, and *People* v. *González,* 66 P.R.R. 851, cited by the appellant, is not applicable inasmuch as the present case does not deal with communications of third persons with the jury while the latter was deliberating, in violation of § 267 of the Code of Criminal Procedure and, furthermore, in the above cases it was neither raised nor decided whether affidavits of jurors were admissible to impeach their own verdict. We are of the opinion that the lower court did not err in refusing to receive the affidavits of jurors Santiago and Del Valle. Under the attendant circumstances they were not admissible to support the motion for a new trial. The incident to which these affidavits referred took place before the close of the trial and before the case was submitted to the jury. The jurors who presented those affidavits as well as the others who constituted the panel, had ample opportunity to inform the court if any irregularity had taken place. To wait for two months after the case is closed and then state that a certain incident (which could and should have been investigated by the court

immediately after its occurrence, if it did happen) prevented them from: "discussing certain aspects of the evidence". according to juror Santiago, or feeling "free to discuss the incidents and evidence of the trial," according to juror Del Valle, and seek with those affidavits to annul a verdict, which upon being rendered, those two jurors—and all the others— individually accepted as their own verdict, would be to establish a precedent repugnant to sound public policy. Upon taking the oath to act as jurors they bound themselves to decide the case on the evidence introduced guided by the instructions of the court as to the applicable law. The presumption is that the jurors complied with their duty and that the incident mentioned by two of them if it did happen, did not influence their verdict, no matter what they seem to believe two months after its rendition. The first error assigned was not committed.

■■ As to the second assignment alleging that the lower court did not suspend the sentence pursuant to § 2 of Act No. 259 of April 3, 1946 (Laws of 1946, page 534)[2], appellant maintains that since the probation officer gave a favorable report for a suspended sentence "the judge had no discretion to deny said sentence and should have complied with the report of the probation officer."

---

[2] Section 2 provides:

"The effect of the sentence imposed on any person guilty of a felony other than murder in the first degree, shall be suspended, and the person sentenced placed on probation whenever at the time of imposing said sentences the following requisites concur: (a) that the defendant has not been convicted, sentenced and confined in prison for any offense whatsoever prior to the commission of the offense for which he is prosecuted; (b) that the offense committed does not evince the degree of moral warping that makes indispensable confinement of the offender in a penal institution as an attempt at reform; (c) that the trial court has before it a report made to it by a probation officer of the court or of the Parole Board, after said probation officer has carefully investigated the circumstances of the offense committed, the family background, and the social history of the accused, and that such investigation discloses that said defendant was always a law-abiding citizen; *Provided,* That the trial court shall fix the terms under which the accused shall be placed on probation. *Provided, further,* That the court may, in its discretion, in addition to placing the person sentenced on probation, impose on him a fine proportionate to the nature of the offense committed."

We do not agree with appellant. There is nothing in § 2, *supra*, which tends to show that it was the intention of the Legislature to supplant the legal discretion of a judge by that of a probation officer, who is a layman in legal questions. The report of the probation officer reflects the investigation carried out by him as to the circumstances under which the offense was committed, the family background and the social history of the defendant. It is true that § 2 further states that "such investigation discloses that said dfendant was always a law-abiding citizen" and we believe that in the report of this case [3] the probation officer stated that appellant was such a citizen. Notwithstanding this, when the trial court refused to grant the suspended sentence it stated that although the defendant had not been sentenced and confined in prison for any offense prior to the commission of the crime for which he was tried, yet he had been tried, convicted and sentenced in nine misdemeanor cases among them one for aggravated assault and battery; that in each one he paid the corresponding fine and concluded that those facts taken together with the carrying of the revolver with which he committed the crime in the districts of Guayama and Ponce showed that in the opinion of the judge defendant was and is not a law-abiding citizen. The lower court further stated that the circumstances under which the crime was committed in the present case, according to the evidence for the prosecution, as well as that of the defense, show the degree of moral turpitude that require his confinement in the penitentiary as an attempt to his reform.

We have examined the evidence introduced in this case and we are convinced that the action of the lower court is fully justified. The use of the word "shall" in § 2, *supra*, aoes not mean that it is mandatory for the court to suspend

---

[3] This report is not in the record. There is nothing in Act No. 259 of 1946 which provides that reports of probation officers in these cases should be filed with the record.

a sentence when some or all of the facts enumerated therein [4] are present. The conclusion reached by a court as to whether defendant should be granted the benefit of a suspended sentence, rests in its sound discretion, keeping in mind, of course, each and everyone of the facts of the case and the provisions of § 2 of Act No. 259, *supra*. On appeal we shall not interfere with this conclusion unless it is shown that the same is erroneous and not supported by the evidence. In the present case this has not been shown.

The judgment below, as well as the order denying a new trial, is affirmed.

[4] "Probation or suspension of sentence comes as an act of grace to one convicted of a crime and may be coupled with such conditions in respect of its duration as Congress may impose." *Escoe* v. *Zerbst,* 295 U. S. 490, 492.