**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2024**

# In the Court of Appeals of Georgia

A24A0161. WOODS v. HEATH.

GOBEIL, Judge.

After Lorrene Woods rear-ended the vehicle Shawn Heath was driving, Heath filed suit. The case proceeded to a jury trial, and the jury awarded Heath $2,000,000 in damages. Woods filed a motion for new trial, which the court denied. The trial court also entered an order granting Heath's motion for OCGA § 9-11-68 attorney fees and litigation expenses. On appeal, Woods contends the trial court erred by permitting Heath's counsel to inform the jury that Woods had liability insurance coverage. Woods also argues that the trial court's grant of Heath's motion for fees and expenses was erroneous because the order was issued after she had filed her notice of appeal. For the reasons explained more fully below, we reverse the judgment, vacate

the attorney fee award under OCGA § 9-11-68, and remand for a new trial.

"(T)his Court reviews the judgment entered by the trial court after approval of a jury verdict upon the any evidence test, absent any material error of law. Additionally, when a question of law is at issue, we owe no deference to the trial court's ruling and apply a de novo standard of review." *Howland v. Wadsworth*, 324 Ga. App. 175, 176-177 (749 SE2d 762) (2013) (citations and punctuation omitted).

So viewed, the record shows that on the afternoon of Wednesday, July 11, 2018, Heath was driving on Interstate 16 near Savannah, heading home from his job as a painter. As he approached Chatham Parkway, traffic stopped, and he hit his brakes and came to a stop. Woods was unable to stop in time and hit Heath's truck from behind. Although Woods felt "very shaky" immediately after the collision, he did not report any pain at the crash scene, and he was able to work the Thursday and Friday immediately following the accident. Over the weekend however, he noticed pain in his lower back, and he sought medical treatment the following Monday. Prior to this emergency room visit, Woods had never before sought treatment for lower back pain. He was diagnosed with a muscle/lumbar strain and advised to seek follow-up treatment at Curtis Cooper Clinic as needed. Heath did not go to this clinic, but instead sought treatment with a chiropractor at Dynamic Spine & Rehab

("Dynamic"). Heath testified that the treatment he received at Dynamic did not improve his condition.

On July 30, 2018, Heath had an MRI, and the scan showed extensive, pre-existing spinal degeneration. He saw another chiropractor at Ortho Sport & Spine ("Ortho") in 2019. In September 2020, Heath had a second MRI, which showed a significant worsening of his condition, including additional herniated discs in his lumbar spine. A March 2021 MRI showed serious deterioration of his lumbar spine, and he underwent lumbar spinal fusion surgery in May 2021.

In November 2019, Heath filed a personal injury action against Woods, raising claims for negligence and negligence per se and seeking general and special damages, including damages for past and future medical expenses and lost income. Prior to trial, Woods filed a motion in limine seeking, in relevant part, to exclude references to the existence of liability insurance or coverage, arguing that "[a]ny reference or inference by counsel or witnesses regarding insurance increases the danger of prejudicially impressing upon the jurors the fact that [Woods] has or may have had liability insurance." Noting that Heath did not object, the trial court granted Woods's motion in limine.[1]

---

[1] Heath also filed motions in limine seeking to exclude, in relevant part, evidence that Heath's medical treatment (aside from his emergency department

3

In a consolidated pretrial order, Heath noted that he was seeking $852,727.02 in past and future medical expenses. In her portion of the pretrial order, Woods "acknowledge[d] responsibility for the collision," but contended that Heath's "current complaints and medical problems are due to pre-existing and unrelated conditions and are not the result of the minor accident of July 11, 2018." At trial, the jury heard testimony from Heath, as well as from several physicians who opined as to his medical treatment and condition. Heath could not recall if his physicians informed him about whether his spinal bulges and herniations were related to the July 2018 accident. When Woods took the stand, she admitted that she was involved in a collision with Heath's vehicle after traffic slowed ahead of her and she was unable to stop in time.

During closing argument, Woods's counsel conceded that Woods was not contesting liability for the car accident. However, counsel then highlighted the July 30, 2018 MRI that showed broad based disc bulging, but did not show herniation. In contrast, two years later, Heath's MRI showed herniations in the lumbar spine, which

treatment) was provided on a lien basis, such that the physicians would receive payment only in the event that Heath recovered damages. Woods objected, arguing that the payment arrangement was highly relevant to attack the credibility of Heath's treating physicians based on their financial interest in the outcome of the case. The trial court denied Heath's motion as to this ground, and noted that evidence of the fee structure was "relevant to the issues of credibility, potential bias[,] and causation."

Woods' counsel described as "entirely consistent with regression of degenerative conditions in the spine." He posed the issue before the jury as follows: "Is there proof from the evidence you've heard, that the motor vehicle accident[ ] has caused any herniation in Mr. Heath's spine?" Defense counsel set out the evidence that he contended proved Heath's condition was degenerative and unrelated to the accident, and argued:

> The ER doctor didn't send [Heath] to the chiropractor. He went there. He says it was no help, but asking you to make Ms. Woods pay for it. . . . [E]ven those injections they did, all of those things, what did he say about that in his testimony? No help. I still want you to make Ms. Woods pay for it. The future surgeries, they've got tremendous future costs. They're asking you to award against Ms. Woods. You have to decide for yourself, is it going to happen, is it necessary, is it related to this accident[ ]? And that's what you have to decide about every medical bill in this case . . . .

Heath's counsel did not object to these statements during closing argument, but after Woods's counsel had concluded his argument, the parties convened a bench conference. Heath's counsel argued that Woods had opened the door to evidence of liability insurance coverage to counter the representation that Woods "is going to be responsible for any judgment paid in this case[.]" He continued: "by interjecting that Ms. Woods would be personally responsible, that misleads the jury, and it improperly

suggests to them that Ms. Woods would be personally responsible for any burden, which is not actually the case." Heath's counsel therefore requested permission to inform the jury that "Ms. Woods has auto insurance through State Farm and it applies to this case." Woods's counsel strongly objected, maintaining that the introduction of liability insurance constitutes reversible error. The trial court ruled that Heath's counsel could inform the jury about Woods's coverage with State Farm, reasoning that Woods's counsel's statements that Heath wanted her to pay the medical bills, "rather than saying [he] wants damages awarded," would permit argument that Woods had liability coverage. Woods's counsel again objected and moved for a mistrial, and the court noted his objection for the record.

Heath's counsel then made his closing argument to the jury. He pointed to a lack of evidence contradicting Heath's case, and requested past and future medical expenses of approximately $853,000, and $1,663,160 for past and future pain and suffering. Heath's counsel then explained to the jury:

> And there's a couple of comments that [Woods's counsel] made that I want to, just imply to you that is appealing to your sympathy and not to the law and all what you have to follow. [Woods's counsel] told you that Mr. Heath wanted Ms. Woods to pay for medical expenses to Dynamic Spine, Ortho Spine and for future surgery. In reality, Ms. Woods has auto insurance. We're asking her [ ] auto insurance to pay — State Farm

6

— [.]

Wood's counsel lodged an objection, and the trial court overruled the objection, stating: "An objection was made earlier and there was law that was presented outside the presence of the jury. And I will overrule your objection."

When the proceedings resumed the following morning, defense counsel again moved for a mistrial on the ground of the improper mention of liability insurance coverage. Woods's counsel specifically addressed the potential harm of the improper injection of this information, noting that "to say that we're not asking her to pay anything, because she has State Farm Insurance, is misleading to the jury, because it infers that there's enough insurance to pay all of that, which is far from it. So I think it opens the door to a mess that can't be fixed[.]" In denying the motion for a mistrial, the court ruled that the evidence of liability insurance was "admissible for a relevant purpose to explain to the jury, any misconception that Ms. Woods would be personally held responsible for these damages."

The trial court then instructed the jury on the law to be applied in the case, and gave the following instruction: "The existence of a liability insurance policy should have no bearing on your decision to award or not award damages in this case, nor should it have any bearing on the amount of damages awarded if deemed appropriate

value [sic]." Defense counsel excepted to the charge, which had not been discussed at the previous day's charge conference, arguing that the court's instruction "just emphasizes that there was perhaps an insurance policy here, which should . . . not have been brought up at all in the trial and certainly not emphasized in the charge." Counsel then renewed the motion for mistrial based on the introduction of the liability policy, and he maintained that the court's curative instruction was inadequate. The court denied the renewed motion for a mistrial.

Following deliberations, the jury returned a verdict in favor of Heath and awarded him $2 million in damages, including $621,000 in special damages and $1,379,000 in general damages. The trial court entered judgment on the jury's verdict, after which Heath filed a motion for attorney fees and litigation expenses pursuant to OCGA § 9-11-68, Georgia's Offer of Settlement Statute. In his motion, Heath claimed that he was entitled to an award of fees and costs because the jury's verdict was greater than 125 percent of his May 28, 2020 settlement offer. See OCGA § 9-11-68 (b) (2).

Woods filed a motion for new trial, as amended, raising the general grounds and arguing that the trial court erred by allowing Heath's counsel to disclose to the jury that Woods had liability insurance with State Farm — thus implying that she would

8

not have to personally pay the judgment rendered against her — and erred in charging the jury as to the existence of liability insurance. After a hearing, the trial court denied the motion for new trial, finding that OCGA § 24-4-411 afforded the court discretion to admit evidence of insurance and it allowed the jury to "be permitted to learn of the presence of State Farm to correct any misconception that [Woods] would solely be responsible for any verdict entered in the case." Woods filed her notice of appeal on July 5, 2023; and the following day, the trial court issued an order granting Heath's motion for OCGA § 9-11-68 fees in the amount of $842,242.90.

1. In related claims of error, Woods argues that the trial court erred by permitting Heath's counsel to inform the jury that Woods had liability insurance coverage, and she therefore is entitled to a new trial. She contends that this disclosure violated OCGA § 24-4-411 and was extraordinarily prejudicial. She also maintains that the trial court erred by finding that her counsel's statements "opened the door" to disclosure of her insurance coverage, and the court's purported curative instruction did not remedy the error. We agree.

"The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. Unless it is apparent that a mistrial is essential to preservation of

9

the right of a fair trial, the discretion of the trial judge will not be interfered with." *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 482 (9) (491 SE2d 909) (1997) (citation and punctuation omitted). "Similarly, the denial of a motion for a new trial is also a matter within the sound discretion of the trial court. Accordingly, it will not be disturbed if there is any evidence to authorize it." *Defusco v. Free*, 287 Ga. App. 313, 314 (651 SE2d 458) (2007) (citation and punctuation omitted). An abuse of discretion "occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Mathis v. BellSouth*, 301 Ga. App. 881, 881 (690 SE2d 210) (2010).

As noted above, after the trial court permitted Heath's counsel to disclose to the jury that Woods had insurance with State Farm, Woods's counsel moved for a mistrial. In denying the motion, the trial court relied on OCGA § 24-4-411, and deemed the fact that Woods was insured "admissible for a relevant purpose to explain to the jury, any misconception that Ms. Woods would be personally held responsible for these damages."

OCGA § 24-4-411 provides:

In all civil proceedings involving a claim for damages, evidence that a person was or was not insured against liability shall not be admissible except as provided in this Code section. This Code section shall not

10

require the exclusion of evidence of insurance against liability in proceedings . . . when such evidence is offered for a relevant purpose, including, but not limited to, proof of agency, ownership, or control, and the court finds that the danger of unfair prejudice is substantially outweighed by the probative value of the evidence.

This statute is the codification of the well-settled law in Georgia that the erroneous injection of insurance into a tort case is grounds for a mistrial "[b]ecause of its irrelevance and prejudicial value. Such evidence is highly prejudicial and it can influence the entire case, no matter which side attempts to introduce it." *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42 (402 SE2d 269) (1991) (citation and footnote omitted), disapproved on other grounds by *Grissom v. Gleason*, 262 Ga. 374, 376-377 (2) (418 SE2d 27) (1992).

> The strict exclusion of [evidence of insurance] is due . . . chiefly to the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk.

*Denton*, 261 Ga. at 42-43 n. 2 (citation and punctuation omitted).

We agree with Woods that the trial court erred by permitting Heath's counsel to disclose to the jury the fact that Woods had liability insurance coverage. Woods's counsel's statements that Heath was "asking [the jury] to make Ms. Woods pay for"

11

the chiropractic care and future surgeries were "not inconsistent with the existence of insurance coverage [such that Woods] did not open the door to admission of evidence that she was covered by insurance." *Brown v. Macheers*, 249 Ga. App. 418, 421 (6) (547 SE2d 759) (2001). Nor was the fact of coverage offered for a proper purpose, such as proof of agency, ownership, or control; impeachment; or to show bias. See, e.g., *Kelley v. Purcell*, 301 Ga. App. 88, 89-91 (686 SE2d 879) (2009) (evidence that plaintiff had insurance coverage held relevant and admissible to impeach plaintiff's testimony that she could not afford surgery, and delay in surgery was part of her damages claim); *Brown v. Tucker*, 337 Ga. App. 704, 711-713 (3) (788 SE2d 810) (2016) (no error in trial court's ruling admitting evidence of insurance coverage where court concluded that probative value of evidence showing bias substantially outweighed prejudicial effect of allowing party to introduce evidence of insurance), disapproved of on other grounds by *Miller v. Golden Peanut Co., LLC*, 317 Ga. 22, 29 (1) (b) n. 8 (891 SE2d 776) (2023). Instead, in this case the trial court permitted argument on the fact of insurance coverage for the precise reason such evidence is prohibited — to convey to the jury that State Farm, rather than Woods, would be responsible for paying any damages awarded by the jury.

Having determined that the trial court erred by permitting the improper

12

argument, we now turn to whether its denial of the motion for mistrial and motion for new trial constituted an abuse of discretion.

> In Georgia[,] the injection into a case of testimony pertaining to liability insurance does not automatically require a grant of a motion for a mistrial. It is only where the testimony is so obviously prejudicial in its nature that its adverse effect cannot be eradicated from the minds of the jury or its consequences avoided by proper cautionary instructions from the court, that a mistrial should be granted. The determination as to whether these harmful factors are present in a case necessarily rests in the discretion of the trial judge. Appellate courts should never interfere with the exercise of that discretion unless it is made to appear that wrong or oppression has resulted from its abuse. This principle is historically respected in this jurisdiction.

*Defusco*, 287 Ga. App. at 314-315 (citation and punctuation omitted). In this case, the trial court did not rebuke Heath's counsel for injecting the issue of insurance coverage into the case. Indeed, the court expressly permitted this line of argument and overruled Woods's objection to the mention of State Farm in the presence of the jury. Furthermore, because the injection of insurance was sanctioned by the trial court, we cannot say that the court's purported curative instruction was sufficient to remedy the improper reference to the existence of liability insurance coverage as "[s]uch evidence is prejudicial because by its nature its effect is not self-limiting, but it laps over into other considerations," and "contaminat[es] . . . the issue of loss with the issues of

injury and liability." *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 176 (1) (421 SE2d 767) (1992) (citation, punctuation and emphasis omitted). "[G]iven our Supreme Court's statements that evidence of insurance involves a substantial likelihood of prejudicial impact and is inherently prejudicial because its infectious nature tends to contaminate the entire trial," we cannot say that this error was harmless in light of the circumstances described above. *Luke v. Suber*, 217 Ga. App. 84, 86-87 (1) (456 SE2d 598) (1995) (citation and punctuation omitted). Because the improper injection of liability coverage likely prejudiced Woods's case, we agree that the trial court committed reversible error and remand the case for a new trial.

2. "Because an award under OCGA § 9-11-68 (b) (2) is contingent upon the final judgment in the case, we vacate the trial court's award of attorney fees and expenses of litigation." *MARTA v. Tyler*, 360 Ga. App. 710, 714-715 (2) (860 SE2d 224) (2021).

*Judgment reversed in part and vacated in part and case remanded. Barnes, P. J. concurs fully and specially and Pipkin, J., concurs.*

14

A24A0161.  WOODS v. HEATH.


BARNES, Presiding Judge, concurring fully and specially.

I concur fully in the majority's opinion.  Having carefully reviewed the trial transcript, I agree with the majority that Woods's counsel did not go so far as to claim or imply during closing argument that Woods lacked insurance.  However, I write separately to emphasize that in a case where defense counsel did in fact claim or imply during closing argument that the defendant had no insurance, the trial court would have the discretionary authority to reopen the evidence and allow the introduction of evidence of insurance coverage.  See generally *Young v. State*, 292 Ga. 443, 444 (2) (738 SE2d 575) (2013) (concluding that trial court acted within its discretion in

allowing the reopening of the evidence based on comment made by defense counsel during closing argument, and reciting that "whether to reopen the evidence is a matter that rests within the sound discretion of the trial court"); *Britten v. State*, 221 Ga. 97, 101 (4) (143 SE2d 176) (1965) ("It is within the discretionary power of the court to allow a witness to be sworn after the evidence on both sides has been announced closed and the argument has been commenced[.]") (citation and punctuation omitted).